**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION / DUBUQUE**

| | |
|---|---|
| **PATRICIA STEINES, as Administrator of the Estate of DREW EDWARDS, WALTER EDWARDS and BARBARA EDWARDS,** | **Case No.** |
| **Plaintiffs,** | |
| **v.** | **COMPLAINT AND JURY DEMAND** |
| **CITY OF MAQUOKETA, IOWA; JACKSON COUNTY, IOWA; BRENDAN ZEIMET; and STEVE SCHROEDER,** | |
| **Defendants.** | |

**COMES NOW** the Plaintiffs, Patricia Steines, as Administrator of the Estate of Drew Edwards, Walter Edwards and Barbara Edwards, for their Complaint and Jury Demand against Defendants City of Maquoketa, Iowa; Jackson County, Iowa; Steve Schroeder; and Brendan Zeimet, state to the court, as follows:

## INTRODUCTION

1.     This is an action brought to redress the deprivation – under color of policy, regulation, official decision, custom, or usage – of rights secured to Plaintiff by 42 U.S.C. § 1983 arising under the Fourth Amendment, incorporated to the states through the Fourteenth Amendment to the United States Constitution, and the Constitution of the State of Iowa, Article I, Sections 1, 2, 8 and 9; and includes Iowa common law negligence (wrongful death), loss of consortium and public records disclosure claims.

## JURISDICTION

2.     Jurisdiction is conferred to this Court through 28 U.S.C. §§1331 and 1343 and venue is appropriate in this district under 28 U.S.C. § 1391(b).

3.      All the unlawful acts alleged herein occurred in Maquoketa, Jackson County, Iowa, or about June 15, 2019, when the Defendants murdered Drew Edwards.

## PARTIES

4.      At all times material hereto, Patricia Steines (hereinafter referred to as "Steines") was a resident of Jackson County, IA.  Steines is the sister of Drew Edwards and the Personal Representative of the Estate of Drew Edwards, deceased (hereinafter referred to as "Edwards") who was a citizen and resident of Jackson County, Iowa.

5.      At all times material hereto, Walter and Barbara Edwards were residents of Jackson County, Iowa and the parents of Drew Edwards.

6.      Defendant Steve Schroeder (hereinafter referred to as "Schroeder") was at all times material hereto an employee of Jackson County, Iowa, violated Edwards' constitutional rights and ultimately caused the wrongful death of Edwards using excessive force.  Defendant Schroeder is being sued in his individual capacity.

7.      Defendant Brendan Zeimet (hereinafter referred to as "Zeimet") was at all times material hereto an employee of the City of Maquoketa, Iowa, violated Edwards' constitutional rights and caused the wrongful death of Edwards using excessive force.   Defendant Zeimet is being sued in his individual capacity.

8.      The Defendant City Maquoketa includes a police department and other administrative agencies (hereinafter referred to as "Maquoketa") which employs Defendant Zeimet, whom they failed to properly train, equip and/or monitor.

9.      The Defendant Jackson County, Iowa includes a sheriff's department and other administrative agencies (hereinafter referred to as "Jackson county") which employs Defendant Schroeder, whom they failed to properly train, equip and/or monitor.

## FACTUAL BACKGROUND

10.    Edwards was born on January 26, 1997, and was 22 years old at the time he was murdered by Defendants Schroeder and Zeimet on or about June 15, 2019.

11.    The Jackson County Sheriff's Department and the Maquoketa Police Department, including Schroeder and Zeimet, were fully aware of two prior arrests in which tasers were used causing injury to Edwards which required hospitalization.

12.    Defendant Zeimet was involved in both of the prior arrests of Edwards where tasers were used and caused Edwards to be hospitalized.

13.    On or about October 17, 2016, Edwards was arrested while trying to repair the chain of a bicycle he was riding.

14.    Tasers were used to apprehend Edwards on October 17, 2016, and resulted in Edward's hospitalization for "sinus tachycardia."

15.    On or about May 15, 2018, Edwards was arrested without probable cause where tasers were used and caused Edwards to be hospitalized.

16.    With regard to the May 15, 2018, arrest Edwards was charged with Interference with Official Acts under I.C.A. 719.1(1)(C); Disorderly Conduct under I.C.A. 723.4(1); and Disarming a Peace Officer under 708.13(2).

17.    The May 15, 2018, arrest was in a courtroom and videotaped without sound.

18.    The May 15, 2018, arrest was allegedly initiated because of an arrest warrant that was in the process of being prepared, but no arrest warrant was produced and no charges unrelated to the May 15, 2018, arrest sequence were filed against Edwards.

3

19.     The video of the May 15, 2018, arrest shows the Defendants were not truthful in alleging that Edwards attempted to disarm a police and Edwards was found not guilty of that charge.

20.     The video of the May 15, 2018, arrest shows that at all times the Defendants were the aggressors and the Edwards only "froze up" and refused to be submissive in the arrest.

21.     The video of the May 15, 2018, arrest shows that Edwards never hit, kicked, punched or otherwise physically attacked any law enforcement officer.

22.     After murdering Edwards on June 15, 2019, the Defendants falsely claimed that Edwards had a history of attempting to disarm police officers when being placed under arrest and that false claim became a narrative which was used to justify the murder in initial news stories and social media posts.

23.     The Defendants put out the false claim that Edwards' had previously attempted to disarm law enforcement officers when being placed under arrest in order to intentionally mislead the public and cover up Edwards' murder by law enforcement officers.

24.     Defendants' disseminating the false claim about Edwards previously attempting to disarm a law enforcement officer when being placed under arrest was particularly outrageous because no law enforcement officer present at the time Edwards was murdered has claimed that tasing him to death was necessary because he was trying to disarm an officer at that time.

25.     The Defendants were fully aware prior to tasing Edwards to death on June 15, 2019, that Edwards had a medical condition making him more susceptible to serious injury or death if tased.

4

26.     While Edwards was incarcerated just prior to his murder the Defendants threatened Edwards by displaying their "new" tasers to him and even going so far as to demonstrate the force of the tasers.

27.     One Jackson County law enforcement officer told a family member of Edwards, prior to his murder on June 15, 2019, that "the next time we have to arrest Edwards we will probably kill him."

28.     On June 28, 2019, undersigned counsel on behalf of Plaintiffs requested information related to the murder of Edwards from counsel representing the Defendant City of Maquoketa.

29.     On July 24, 2019, the Defendant City of Maquoketa denied the Edwards family's request for information regarding his murder citing primarily the need to keep the material confidential pending completion of the criminal investigation.

30.     On September 26, 2019, the Edwards family was informed that the criminal investigation into his death was completed, that no criminal charges would be filed against any law enforcement officer involved in Edwards' murder, and on that same date the undersigned counsel, on behalf of the Edward's family, again requested information from the City of Maquoketa.

31.     On October 15, 2019, the Defendant City of Maquoketa "acknowledge[d] that the investigation into Mr. Edwards death has concluded," but again denied the Edwards family request for information regarding his murder.

32.     The Defendant City of Maquoketa refused to produce the material regarding Edwards' murder claiming, contrary to Iowa law and Iowa Supreme Court precedent, that no

information had to be produced to the Edwards family by ironically claiming to protect the "privacy rights of all of Mr. Edwards' family members."

33.     The Defendant City of Maquoketa further claimed, contrary to Iowa law and Iowa Supreme Court precedent, that it alone could decide what material would be released by weighing "the public interest disclosure of the records would serve."

34.     On September 26, 2019, a letter from the Muscatine County Attorney, as designated by the Iowa Attorney General, was released purporting to be a report regarding the murder of Edwards.

35.     The alleged report of the Muscatine County Attorney was in actuality no more than a news release attempting to exonerate the Defendants from criminal charges for murdering Edwards.  It contained none of the indicia of a thorough analysis of the facts and applicable law necessary to reasonably make a criminal charging decision.

36.     The news release from the Muscatine County Attorney makes no mention of the prior arrests of Edwards using tasers, the Defendants knowledge of Edwards medical condition making him more susceptible to serious injury or death if tased, nor the prior threats made by the Defendants to use tasers on Edwards in the future and predicting his death as a result.

37.     The sparse facts set out in the news release are the only material that has been released regarding the murder of Edwards and the relevant facts to be gleaned from the news release are set out below in paragraphs 38 – 52.

38.     On June 15, 2019, Defendants Schroeder and Zeimet were attempting to place Edwards under arrest for a simple assault, not involving any weapon and which did not result in serious bodily injury, *i.e*., he allegedly punched someone "earlier that day."

6

39.     Defendants Schroeder and Zeimet had no reason to believe that Edwards was a threat to them or anyone else at the time they attempted to place him under arrest.

40.     Defendants Schroeder and Zeimet were both aware of Edwards' history of requiring hospitalization after being tased.

41.     Despite the knowledge of Edwards' heart condition one of the Defendants (the news release does not identify which one) tased Edwards not just once, but at least twice, using what is understood to be essentially a double barrel taser capable of firing two separate sets of prongs connected by wire to the taser and allowing two separate sources of electric shock.

42.     Despite the fact that taser usage, including time, duration and voltage of every single discharge or trigger pull, is automatically recorded, the news release does not disclose any of this vital information for either set of taser prongs used to murder Edwards.

43.     No claim is made that Edwards ever hit, kicked, punched, or any way threatened or physically assaulted any of the law enforcement officers present, *i.e.*, he initially ran away and when caught Edwards "froze up" and refused to be compliant in the arrest.

44.     The only claims made in the news release regarding Edwards' conduct during the arrest are that he "refused to cooperate with the arrest process . . . fled on foot . . . continued to physically resist the arrest process . . . physically resisted the efforts of the officer to [handcuff him] . . . [and] attempted to throw the officers off him [when one officer was sitting on his head and the other was straddling his legs].

45.     None of Edwards' conduct as identified in the news release justifies the use of force inflicted upon Edwards in response.

46.     The Defendants did not stop physically restraining and tasing Edwards until he was "not breathing."

47.     Edwards died of "cardiac arrest."

48.     Edwards had methamphetamine and marijuana in his system at the time of his murder, but the news release did not disclose the levels or the resulting anticipated impairment thereby causing Plaintiffs to believe by implication that those levels were low to moderate.

49.     The news release opines that Defendants Schroeder and Zeimet "had the right to use that level of reasonable force necessary to complete the arrest" without considering the minor crime he was accused of committing; the lack of threat posed by Edwards; other alternatives available including batons, pepper spray, and/or retreating to make the arrest of a known suspect later; and the known history of Edwards suffering tachycardia when tased; all of which make the conclusion to not file criminal charges against the individual Defendants just part of the continuing cover up of the murder of Drew Edwards.

50.     The news release concludes by claiming that "Edwards resistance to a lawful arrest led directly to his death," thereby setting out an unlawful standard by which any law enforcement officer in the State of Iowa could execute any resisting arrestee at any time.  The resistance does not even need to be active, *i.e.* assaultive.

51.     All the alleged actions of all of the Defendants were conducted under color of state law.

52.     The Defendants were aware that Edwards was a polite, likeable and cooperative individual when not under the influence of drugs.

53.     The Defendants were aware that drug addiction is an illness that requires medical treatment and that suffering from such an illness does not justify beating and tasing someone to death.

54.     Defendant Zeimet had had a vendetta against Edwards and took every available opportunity to arrest him using excessive force.

55.     Defendant Schroeder was among several Jackson County Deputies who displayed and tested new "double barrel" two-shot tasers in front of Edwards and other inmates. The Deputies had a fire extinguisher present and told the inmates that was necessary because the new tasers were so powerful the targets they were using were catching on fire. It is believed that one of the double barrel tasers showed to Edwards while he was in jail is the same one that was later used to murder him.

56.     Other Jackson County Jail personnel would "tease' Edwards about being tased, how much it hurt and went so far as to pretend to tase Edwards.

57.     Defendant Schroeder told other inmates that Edwards could tell them that getting tased "did not feel good."

58.     In the arrest of May 15, 2018, the Defendants referenced that Edwards suffered from "excited delirium" at the time of the arrest.

59.     "Excited delirium" is not an officially recognized medical condition.

60.     "Excited delirium" is based upon the scientifically unproven claim that a person's brain on drugs and under stress will basically just short-circuit and the person may have super human strength.

61.     The term "excited delirium" was made up in Miami during the 1980s to attempt to explain why so many cocaine and crack addicts were dying in the city's streets at the hands of law enforcement officers.

62.     "Excited delirium" was simply invented to help cover up law enforcement officer misconduct.

9

63.     Taser, the company that manufactures the weapon used to murder Edwards, funds research at the University of Miami in an attempt to justify "excited delirium" as a diagnosis justifying police use of excessive force and sends out brochures to law enforcement agencies and coroners' offices touting "excited delirium" as diagnosis for explaining the death of a suspect in custody.

## COUNT I

### USE OF EXCESSIVE FORCE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION and
### ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION

64.     Plaintiffs incorporate paragraphs 1 through 63 above as though fully set forth herein.

65.     Defendants Schroeder and Zeimet's use of excessive force in causing the wrongful death of Drew Edwards was in violation of both the Constitutions of the United States, Fourth Amendment, and the State of Iowa, Article 1, Section 8.   Defendants Schroeder and Zeimet's use of force was unreasonable, unnecessary, prolonged and/or reckless, resulting in Edwards' death.

66.     Defendants Schroeder and Zeimet acting under the color of state law, violated the right of Drew Edwards to be free from the use of excessive force in being placed under arrest, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section Eight, of the Iowa Constitution.

67.     Defendants Schroeder and Zeimet proximately caused damages including emotional pain and trauma, past and future to Plaintiffs by the use of excessive force in effectuating the wrongful death of Drew Edwards in violation of rights guaranteed by the Fourth

and Fourteenth Amendments to the United States Constitution and Article I, Section Eight, of the Iowa Constitution.

68.     Defendants City of Maquoketa and Jackson County have established a policy, regulation, official decision, custom, or usage, and/or ratified such conduct after the fact, with reckless or deliberate indifference to the rights of persons in the position of Edwards and his family.

69.     Defendants City of Maquoketa and Jackson County have established, maintained, enforced, and/or ratified policies, regulations, official decisions, customs, or usages which unconstitutionally deprive citizens of the right to be free from the use of excessive while being detained as guaranteed by the Fourth Amendment to the United States Constitution, and Article I, Section 8, of the Iowa Constitution.

70.     Defendants City of Maquoketa and Jackson County through their policymakers and managers had prior actual or constructive knowledge of the use of excessive force by their employees and/or ratified such conduct after the fact.

71.      Edwards was subjected to this official policy, regulation, official decision, custom, usage, and/or after-the-fact ratification when he was murdered by Defendants Schroeder and Zeimet.

72.     Defendants' policy, regulation, official decision, custom, usage, and/or after-the-fact ratification as against Edwards was purposeful and intentional.

73.     Defendants deprived Plaintiffs of the rights guaranteed them under the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983, and Section I, Article 8, of the Iowa Constitution, by seizing Edwards such that no reasonable person in Edwards's position would have believed they were free to leave without being taken into custody.

74.     Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

75.     Defendants acted in a willful, reckless and/or malicious manner subjecting them to punitive damages.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Steve Schroeder, individually, and Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT II

### SUBSTANTIVE DUE PROCESS
### FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION
### and ARTICLE I SECTION 9 OF THE IOWA CONSTITUTION

76.     Plaintiffs incorporate paragraphs 1 through 75 above as though fully set forth herein.

77.     Defendants use of force was unreasonable, unnecessary, prolonged and/or reckless, resulting in Edwards' death.

78.     At the time Defendants Schroeder and Zeimet used tasers on Edwards they knew he was not a physical threat to their safety or the safety of anyone else and that using a taser on him would likely result in serious injury or death because of his known heart condition/adverse reaction to being tased causing hospitalization.

79.     Defendants Schroeder and Zeimet made the decision to use a taser on Edwards at a time when waiting for back up; using other available weapons, *e.g.* pepper spray or batons. or retreating and arresting him later were clear and viable options.

80.     Defendants Schroeder and Zeimet knew Edwards was a polite and reasonable, even deferential, person when not under the influence of drugs, and they knew where Edwards lived just a few blocks from where he was murdered.

81.     In using a taser on Edwards, Defendants Schroeder and/or Zeimet acted in an objectively unreasonable manner and/or with deliberate indifference to a significant risk of harm to Edwards.

82.     In firing a taser at Edwards, Defendants Schroeder or Zeimet acted with malice and with the specific intent to cause harm.

83.     In watching another person fire a taser at Edwards without warning the shooter of Edwards' known heart condition/adverse reaction to being tased requiring hospitalization, Shroeder or Zeimet acted with malice and with the specific intent to cause harm.

84.     Defendants Schroeder and Zeimet acted under the color of state law, violated the right of Drew Edwards to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution.

85.     The Defendants City of Maquoketa and Jackson County violated the right of Drew Edwards to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution by failing to properly train and equip Defendants Schroeder and Zeimet; by ratifying their wrongful conduct after the fact; and/or by engaging in a cover up of their wrongful conduct.

86.     Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Steve Schroeder, individually, and Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

**COUNT III**
**WRONGFUL DEATH – NEGLIGENCE –**
**IOWA LAW**

87.     Plaintiffs incorporate paragraphs 1 through 86 above as though fully set forth herein.

88.     Defendants owed Plaintiffs a duty to act reasonably in the use of force; to conform to an objectively reasonable standard of conduct regarding when, where and under what circumstances use of force is warranted; and to not deprive Edwards of his inalienable rights to enjoy and defend his life, and pursue and obtain safety and happiness in accord with Article I, Section 1, of the Iowa Constitution.

89.     Defendants Schroeder and/or Zeimet breached that duty by discharging a taser and/or not warning or prohibit the other from discharging a taser at Edwards given Edwards' known medical condition/adverse reaction to being tased and that use of a taser on him would likely cause serious injury or death; by failing to use other less lethal forms of force; by failing to wait for sufficient backup; by failing to deescalate the situation; by failing to retreat and arrest Edwards at a later time; and/or by using other available means and conduct to handle the situation without murdering Edwards.

90.     Defendants City of Maquoketa and Jackson County owed Plaintiffs a duty to have in place reasonable policies and procedures regarding the use of force, and/or to properly train and

14

supervise its officers, including Defendants Schroeder and Zeimet, in an objectively reasonable standard of conduct regarding when, where and under what circumstances use of force is warranted.

91.     Defendants City of Maquoketa and Jackson County breached those duties by not having in place reasonable policies and procedures regarding the use of force, and/or by failing to properly train and/or supervise Defendants Schroeder and Zeimet regarding the appropriate use of force; the effect of using tasers on individuals with heart conditions/adverse reactions like Edwards; and/or by ratifying the wrongful conduct after the fact.

92.     The Defendants City of Maquoketa and Jackson County are responsible for the conduct of Schroeder and Zeimet under *respondeat superior*.

93.     The Defendants breach of duty owed caused injuries and damages to the Plaintiffs including the wrongful death of Edwards and the loss of adult child consortium for Plaintiffs Walter and Barbara Edwards.

94.     At all times relevant hereto Defendants Schroeder and Zeimet acted as agents of Defendant City of Maquoketa or Jackson County and within the scope of their authority as a police officer.

95.     In the alternative, should Defendants claim immunity and/or qualified immunity for acts within the scope of authority Plaintiffs plead that the Defendants acted outside that scope of their authority.

96.     Defendants City of Maquoketa and Jackson County ratified the conduct of Defendants Schroeder and Zeimet after they took the actions complained of in this complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Steve Schroeder, individually, and Brendan Zeimet,

individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT IV

## LOSS OF CONSORTIUM – WALTER AND BARBARA EDWARDS

97.     Plaintiffs incorporate paragraphs 1 through 96 above as though fully set forth herein.

98.     Walter and Barbara Edwards are the parents of Drew Edwards.

99.     Since Drew Edwards' death Walter and Barbara Edwards have suffered loss of aid, companionship, cooperation, and affection of their son, Drew Edwards.

100.    As a result of said losses Walter and Barbara Edwards have been damaged.

101.    The Defendants are liable to Walter and Barbara Edwards for their losses of consortium.

102.    The losses of Walter and Barbara Edwards are individual and separate from the losses sustained by the Estate of Drew Edwards as the result of his death caused by the wrongful conduct of the Defendants.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Steve Schroeder, individually, and Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT V

## VIOLATION OF OPEN RECORDS LAWS
## INCLUDING ARTICLE I, SECTION 2 of the IOWA CONSTITUTION –
## AGAINST THE CITY OF MAQUOKETA ONLY

103.   Plaintiffs incorporate paragraphs 1 through 102 above as though fully set forth herein.

104.   The Defendant City of Maquoketa, through its representatives, has conspired to cover up the wrongful and unconstitutional conduct of Defendants Schroeder and Zeimet by refusing to disclose the facts and circumstances of the death of Drew Edwards and intentionally misleading the public about the justification for tasing him to death.

105.   The Defendant City of Maquoketa has a history of being involved in the cover up of wrongful conduct by law enforcement officers and prosecutors.

106.   Defendant City of Maquoketa has specifically and unlawfully refused an open records request from the family of Drew Edwards for all audio, video, reports and investigative files of the death of Edwards, particularly those prepared within the first 96 hours after his murder.

107.   The City of Maquoketa has refused to comply with a recent Iowa Supreme Court case noting, as follows:

> There is a presumption in favor of disclosure' and 'a liberal policy in favor of access to public records.' *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012). 'Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability.' *Diercks*, 806 N.W.2d at 652 (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999)).

*Mitchell v. Cedar Rapids*, No. 18-0124, filed April 5, 2019, pp. 10-11. Defendant City of Maquoketa refused to release records covered by the *Mitchell* holding.

108.   Defendant City of Maquoketa refused to release "any investigative reports or electronic communication generated or filed within 96 hours of the incident, but does not apply to

reports or memorandum generated solely for purposes of a police internal review of the incident," as held by the Iowa Supreme Court in *Mitchell*. At p. 6.

109. Defendant City of Maquoketa refused to provide a privilege log identifying what records it was refusing to release and then attempted to put the burden on Plaintiffs to "provide [it] with the public interest disclosure of the records would serve," without identifying any of the records being withheld, all in violation of Iowa law and the holding in *Mitchell*.

110. Defendant City of Maquoketa claims the exclusive right to determine what records are to be produced, contrary to the holding in *Mitchell*, stating that the City "will identify any records weighing in favor of disclosure."

111. Defendant City of Maquoketa is intentionally delaying the freedom of information act process, and its representatives have a history of filing unnecessary and frivolous appeals of orders to release information for the purpose of covering up the wrongful conduct of law enforcement officers.

112. The tactics of the City of Maquoketa, through its representatives, along with others intent on keeping government wrongdoing secret, have made it fruitless and impossible to properly enforce Iowa's open records laws.

113. The City of Maquoketa should be immediately required to release all information regarding the tasing death of Drew Edwards in compliance with the holding of the Iowa Supreme Court in *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 5, 2019.

114. The Defendant City of Maquoketa has acted in violation of Article I, Section 2, of the Iowa Constitution, requiring that "[a]ll political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it."

115. An essential component of Article I, Section 2, of the Iowa Constitution is that governmental wrongdoing cannot be withheld from public scrutiny. Otherwise, the people do not have "all inherent political power." The people are unable to "alter or reform government" as necessary to avoid future wrongdoing if the wrongdoing is hidden from them.

116. Defendants proximately caused damages to Plaintiffs by conspiring to deny access to the facts and circumstances surrounding the death of Drew Edwards and covering up the murder of Drew Edwards, all in violation of Iowa law and the Iowa Constitution.

WHEREFORE, the Plaintiffs pray for an Order from this Court requiring the Defendant City of Maquoketa to publicly release all records regarding the tasing death of Drew Edwards in compliance with *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 5, 2019; for damages, including punitive damages, as allowed by law; attorneys' fees; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

## JURY DEMAND

The Plaintiffs, Patricia Steines, as Administrator of the Estate of Drew Edwards, and Walter and Barbara Edwards, respectfully request a trial by jury on all legal claims raised by this Complaint.


Respectfully submitted,

**DAVE O'BRIEN LAW**
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By: /s/ David A. O'Brien
       DAVID A. O'BRIEN, AT0005870

19

By: /s/ Andrew L. Mahoney
ANDREW L. MAHONEY AT0012329
**CROWLEY & PRILL**
3012 Division Street
Burlington, Iowa 52601
Phone:    319.753.1330
Fax:        319.752.3934
Email:     amahoney@cbp-lawyers.com

**ATTORNEYS FOR PLAINTIFFS**

**Original Filed.**