# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION / DUBUQUE

| | |
|---|---|
| PATRICIA STEINES, as Administrator of the Estate of DREW EDWARDS, WALTER EDWARDS and BARBARA EDWARDS,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF MAQUOKETA, IOWA; JACKSON COUNTY, IOWA; BRENDAN ZEIMET; STEVE SCHROEDER; and MIKE OWEN,<br><br>        Defendants. | Case No. 2:19-CV-1028<br><br><br><br>**FIRST AMENDED & SUBSTITUTED COMPLAINT AND JURY DEMAND** |

**COMES NOW** the Plaintiffs, Patricia Steines, as Administrator of the Estate of Drew Edwards, Walter Edwards and Barbara Edwards, for their First Amended & Substituted Complaint and Jury Demand against Defendants City of Maquoketa, Iowa; Jackson County, Iowa; Steve Schroeder; Brendan Zeimet; and Mike Owen, state to the court, as follows:

## INTRODUCTION

1.      This is an action brought to redress the deprivation – under color of policy, regulation, official decision, custom, or usage – of rights secured to Plaintiff by 42 U.S.C. § 1983 arising under the Fourth Amendment, incorporated to the states through the Fourteenth Amendment to the United States Constitution, and the Constitution of the State of Iowa, Article I, Sections 1, 2, 8 and 9; and includes Iowa common law negligence (wrongful death), loss of consortium and public records disclosure claims.

## JURISDICTION

2.     Jurisdiction is conferred to this Court through 28 U.S.C. §§1331 and 1343 and venue is appropriate in this district under 28 U.S.C. § 1391(b).

3.     All the unlawful acts alleged herein occurred in Maquoketa, Jackson County, Iowa, or about June 15, 2019, when the Defendants murdered Drew Edwards.

## PARTIES

4.     At all times material hereto, Patricia Steines (hereinafter referred to as "Steines") was a resident of Jackson County, IA.  Steines is the sister of Drew Edwards and the Personal Representative of the Estate of Drew Edwards, deceased (hereinafter referred to as "Edwards") who was a citizen and resident of Jackson County, Iowa.

5.     At all times material hereto, Walter and Barbara Edwards were residents of Jackson County, Iowa and the parents of Drew Edwards.

6.     Defendant Steve Schroeder (hereinafter referred to as "Schroeder") was at all times material hereto an employee of Jackson County, Iowa, violated Edwards' constitutional rights which ultimately caused the wrongful death of Edwards using excessive force.  Defendant Schroeder is being sued in his individual capacity.

7.     Defendant Brendan Zeimet (hereinafter referred to as "Zeimet") was at all times material hereto an employee of the City of Maquoketa, Iowa, violated Edwards' constitutional rights which ultimately caused the wrongful death of Edwards using excessive force.  Defendant Zeimet is being sued in his individual capacity.

8.     The Defendant City Maquoketa includes a police department and other administrative agencies (hereinafter referred to as "Maquoketa") which employs Defendant Zeimet, whom they failed to properly train, equip and/or monitor.

2

9.     The Defendant Jackson County, Iowa includes a sheriff's department and other administrative agencies (hereinafter referred to as "Jackson county") which employs Defendant Schroeder, whom they failed to properly train, equip and/or monitor.

10.    Defendant Mike Owen (hereinafter referred to as "Owen") was at all times material hereto an employee of the City of Maquoketa, Iowa, violated Edwards' constitutional rights and caused the wrongful death of Edwards using excessive force.   Defendant Owen is being sued in his individual capacity.

## FACTUAL BACKGROUND

11.     Edwards was born on January 26, 1997, and was 22 years old at the time he was tased to death by the Defendants on or about June 15, 2019.

12.    The Jackson County Sheriff's Department and the Maquoketa Police Department, including Schroeder, Zeimet and Owen, were fully aware of two prior arrests in which tasers were used causing injury to Edwards which required hospitalization.

13.    Defendant Zeimet was involved in both of the prior arrests of Edwards where tasers were used and caused Edwards to be hospitalized.

14.    On or about October 17, 2016, Edwards was arrested while trying to repair the chain of a bicycle he was riding.

15.    Tasers were used to apprehend Edwards on October 17, 2016, and resulted in Edward's hospitalization for "sinus tachycardia."

16.    On or about May 15, 2018, Edwards was arrested without probable cause where tasers were used and caused Edwards to be hospitalized.

17.    With regard to the May 15, 2018, arrest Edwards was charged with Interference with Official Acts under I.C.A. 719.1(1)(C); Disorderly Conduct under I.C.A. 723.4(1); and Disarming a Peace Officer under 708.13(2).

18.    The May 15, 2018, arrest was in a courtroom and videotaped without sound.

19.    The May 15, 2018, arrest was allegedly initiated because of an arrest warrant that was in the process of being prepared, but no arrest warrant was produced and no charges unrelated to the May 15, 2018, arrest sequence were filed against Edwards.

20.    The video of the May 15, 2018, arrest shows the Defendants were not truthful in alleging that Edwards attempted to disarm a police and Edwards was found not guilty of that charge.

21.    The video of the May 15, 2018, arrest shows that at all times the Defendants were the aggressors and that Edwards only "froze up" and refused to be submissive in the arrest.

22.    The video of the May 15, 2018, arrest shows that Edwards never hit, kicked, punched or otherwise physically attacked any law enforcement officer.

23.    After Edwards' death on June 15, 2019, the Defendants falsely claimed that Edwards had a history of attempting to disarm police officers when being placed under arrest and that false claim became a narrative which was used to attempt to sway public opinion and justify the Defendants' conduct in initial news stories and social media posts.

24.    The Defendants put out the false claim that Edwards' had previously attempted to disarm law enforcement officers when being placed under arrest in order to intentionally mislead the public and cover up Edwards' wrongful death.

25.    Defendants' disseminating the false claim about Edwards previously attempting to disarm a law enforcement officer when being placed under arrest was particularly outrageous

4

because no law enforcement officer present at the time Edwards was killed has claimed that restraining and tasing him to death was necessary because he was trying to disarm an officer at that time.

26. The Defendants were fully aware prior to restraining and tasing Edwards to death on June 15, 2019, that Edwards had a medical condition making him more susceptible to serious injury or death if tased.

27. While Edwards was incarcerated just prior to his death the Jackson County Deputies threatened Edwards by displaying their "new" tasers to him and even going so far as to demonstrate the force of the tasers.

28. One Jackson County law enforcement officer told a family member of Edwards, prior to his death on June 15, 2019, that "the next time we have to arrest Edwards we will probably kill him."

29. On June 28, 2019, undersigned counsel on behalf of Plaintiffs requested information related to the murder of Edwards from counsel representing the Defendant City of Maquoketa.

30. On July 24, 2019, the Defendant City of Maquoketa denied the Edwards family's request for information regarding his death citing primarily the need to keep the material confidential pending completion of the criminal investigation.

31. On September 26, 2019, the Edwards family was informed that the criminal investigation into his death was completed, that no criminal charges would be filed against any law enforcement officer involved in Edwards' death, and on that same date the undersigned counsel, on behalf of the Edward's family, again requested information from the City of Maquoketa.

32.     On October 15, 2019, the Defendant City of Maquoketa "acknowledge[d] that the investigation into Mr. Edwards death has concluded," but again denied the Edwards family request for information regarding his murder.

33.     The Defendant City of Maquoketa refused to produce the material regarding Edwards' death claiming, contrary to Iowa law and Iowa Supreme Court precedent, that no information had to be produced to the Edwards family by ironically claiming to protect the "privacy rights of all of Mr. Edwards' family members."

34.     Drew Edwards' family wants all information regarding his death released to the public and believes that is the only way to hold law enforcement officers accountable for their wrongful and unconstitutional conduct.

35.     The Defendant City of Maquoketa further claimed, contrary to Iowa law and Iowa Supreme Court precedent, that it alone could decide what material would be released by weighing "the public interest disclosure of the records would serve."

36.     On September 26, 2019, a letter from the Muscatine County Attorney, as designated by the Iowa Attorney General, was released purporting to be a report regarding the murder of Edward, but in actuality it was no more than a news release attempting to exonerate the Defendants from criminal charges for killing Edwards.  The news release contained none of the indicia of a thorough analysis of the facts and applicable law necessary to reasonably make a criminal charging decision.

37.     The news release from the Muscatine County Attorney makes no mention of the prior arrests of Edwards using tasers; the Defendants knowledge of Edwards medical condition making him more susceptible to serious injury or death if tased; Defendant Owen's efforts to pressure the complaining witness into filing criminal charges so he could arrest Edwards; the fact

that at the time of his arrest Edwards posed no threat of serious injury or harm to anyone; the number of tasers used, along with the level setting of the taser and the duration of each tase; nor the prior threats made by the Defendants to use tasers on Edwards in the future and predicting his death as a result.

38.     On June 15, 2019, Defendants Owen and Schroeder were attempting to place Edwards under arrest for a simple assault, not involving any weapon and which did not result in serious bodily injury, *i.e.*, he allegedly punched someone "earlier that day."

39.     Defendants Schroeder and Owen had no reason to believe that Edwards was a threat to them or anyone else at the time they attempted to place him under arrest.

40.     Defendants Schroeder and Owen were both aware of Edwards' history of requiring hospitalization after being tased.

41.     Despite the knowledge of Edwards' heart condition Defendant Owen repeatedly tased Edwards using both sets of taser prongs of a double barrel taser capable of firing two separate sets of prongs connected by wire to the taser and allowing two separate sources of electric shock.

42.     Despite the fact that taser usage, including time, duration and voltage of every single discharge and/or trigger pull, is automatically recorded, the news release does not disclose any of this vital information for either set of taser prongs used to kill Edwards.  To date this vital information regarding taser usage has not been provided to Plaintiffs.

43.     No claim is made by any law enforcement officer present that Edwards ever hit, kicked, punched, or any way threatened or physically assaulted any of the law enforcement officers present, *i.e.*, he initially ran away and when caught Edwards "froze up" and refused to be compliant in the arrest.

7

44.     The only claims made by law enforcement officers regarding Edwards' conduct during the arrest are that he "refused to cooperate with the arrest process . . . fled on foot . . . continued to physically resist the arrest process . . . physically resisted the efforts of the officer to [handcuff him] . . . [and] attempted to throw the officers off him [when one officer was sitting on his head and the other was straddling his legs].

45.     None of Edwards' conduct justifies the use of deadly force inflicted upon him in response.

46.     Defendant Zeimet arrived on the scene while Edwards was still alive and he observed Edwards "tense up" but not otherwise resisting arrest.

47.     Defendant Zeimet went hands-on and assisted in restraining and handcuffing Edwards.

48.     The Defendants did not stop physically restraining and tasing Edwards until he was "not breathing."

49.     At no point did Defendants Schroeder or Zeimet remind Defendant Owen of Edwards' prior adverse reactions to being tased or suggest that Owen should stop tasing Edwards; and none of the Defendants suggested to each other that they should get off of Edwards and roll him onto his side for approximately 3 minutes after handcuffs were securely in place.  It was during this 3-minute period that Edwards stopped breathing and died.

50.     Edwards' autopsy lists the following injuries:

"Multiple pinpoint to 1/16 inch red-purple contusions are on the left side of the forehead. A 1/2 x 1/4 inch red-brown abrasion is on the bridge of the nose. There is discontinuous blue- purple ecchymosis at the medial aspect of the right eye. A 1 x 1/4 inch red abrasion is on the upper right cheek. Multiple 1/8 to 1/4-inch red contusions are on the left side of the nasal dorsum and left cheek.  A 1/4 x 1/4-inch red-brown abrasion and multiple 1/4 to 1/2-inch red-purple contusions are in the lingual mucosa of the left side of the upper lip. There is a 1/2 inch roughly horizontal laceration of the left side of the mentis of the chin.  There are multiple 1/16 to 1/8-inch red-brown abrasions on the left ear. There is a 1/2 x 1/4-inch red-

8

brown abrasion of the anterior right side of the neck. Reflection of the scalp reveals subgaleal hemorrhage underlying the left frontal, parietal, and occipital scalp (multiple focally confluent areas measuring 1/2 to 2 inches). There are two 2 x 1-inch areas of intramuscular hemorrhage involving the left temporal and proximal right sternocleidomastoid muscles.

There are multiple 1/8 to 1/4-inch red-purple contusions and red-brown abrasions on the lateral right side of the chest, anterior and inferior to the right axilla. There is a 3/8-inch round red-brown abrasion with a puncture mark at the superior edge on the left side of the mid abdomen. A second 3/8-inch round red-brown abrasion with a central puncture mark is noted on the left side of the lower abdomen, located 7 1/2 inches inferomedially from the first. A 1/2 x 1/8-inch abraded laceration is present on the left side of the lower back. A puncture mark is noted in the in the midline of the lower back, located 6 7/8 inches inferomedially from the lacerated abrasion. Hemorrhage is also noted in the posterior right 3rd intercostal soft tissue.

A 1/8-inch round red-brown abrasion is on the anterior right arm. Multiple 1/8 to 6-inch red- brown abrasions are scattered along the posterior right arm, elbow, and forearm. Multiple pinpoint to 1 inch red-brown abrasions and red-purple contusions are on the anterior left arm and left antecubital fossa. Multiple 1/16 to 1/2-inch red abrasions are on the left elbow and posterior left forearm. There is a fracture of the distal left ulna, with an overlying 4 x 2 1/2-inch red contusion. Multiple 1/4 to 1-inch irregular to linear red-brown abrasions and 1/4 to 1-inch red- purple contusions are on the bilateral posterior wrists and dorsal hands. There is a 1/4-inch laceration of the palm of the left hand.

There is a 1/2 inch red-brown abrasion on the anterior right upper thigh. A 1/2-inch round red-brown abrasion is on the posterior right lower thigh. Multiple 1/16 to 1/8-inch red-purple contusions are noted in the right popliteal fossa. Multiple 1/8 to 2 inch red-brown abrasions and 1 to 3-inch red contusions are on the knees, anterior legs, and dorsal feet. Multiple 1/8 to 2-inch linear red-brown abrasions are scattered across the anterior ankles. A 3/4 x 1/4-inch red-brown abrasion and a 1 x 1/2-inch blue-purple contusion is on the posterior right ankle. A 1 1/2 x 1-inch blue-purple contusion is on the posterolateral left ankle. A 1/2 x 1/8-inch red-brown abrasion is on the left ankle overlying the lateral malleolus. Multiple 1/8 to 1-inch red-brown abrasions are noted on the soles of the feet."

51.     Edwards died of "cardiac arrest."

52.     Edwards had methamphetamine and marijuana in his system at the time of his

death.

53.     The news release opines that Defendants "had the right to use that level of

reasonable force necessary to complete the arrest" without considering the minor crime he was

accused of committing; the lack of threat posed by Edwards to the officers or anyone else; other

alternatives available including waiting for appropriate back up; batons, pepper spray, and/or

9

retreating to make the arrest of a known suspect later; and the known history of Edwards suffering tachycardia when tased; all of which make the conclusion to not file criminal charges against the individual Defendants just part of the continuing cover up of the wrongful death of Drew Edwards.

54. The news release concludes by claiming that "Edwards' resistance to a lawful arrest led directly to his death," thereby setting out an unlawful standard by which any law enforcement officer in the State of Iowa could execute any resisting arrestee at any time. The resistance does not even need to be active, *i.e.* assaultive. All that is required by this ridiculous standard is non-compliance.

55. All the alleged actions of all of the Defendants were conducted under color of state law.

56. The Defendants were aware that Edwards was a polite and likeable individual when not under the influence of drugs and that Edwards' interaction with the Defendants prior to being tased fit that description.

57. The Defendants were aware that drug addiction is an illness that requires medical treatment and that suffering from such an illness does not justify beating and tasing someone to death particularly when the drug addicted suspect poses no immediate threat to anyone.

58. Defendant Zeimet had had a vendetta against Edwards and took every available opportunity to arrest him using excessive force.

59. Defendant Schroeder was among several Jackson County Deputies who displayed and tested new "double barrel" two-shot tasers in front of Edwards and other inmates at the Jackson County Jail. The Deputies had a fire extinguisher present and told the inmates that was necessary because the new tasers were so powerful the targets they were using were catching on fire.

60.     Other Jackson County Jail personnel would "tease' Edwards about being tased, how much it hurt and went so far as to pretend to tase Edwards.

61.     Defendant Schroeder told other inmates that Edwards could tell them that getting tased "did not feel good."

62.     The body cam video of Defendant Owen does not include a time stamp, but the call for service report indicates he arrived at the scene at approximately 7:02 am on June 15, 2019.

63.     Defendant Schroeder arrived at the scene not long after Owen.

64.     Defendant Owen began investigating the cause of the dispute between Edwards and his brother and brother's girlfriend.

65.     Defendant Owen askes the brother and girlfriend if they want to press charges or just make Edwards go away.

66.     Both the brother and girlfriend indicated they just want Edwards to go away.

67.     Defendant Owen repeatedly pressed the brother and girlfriend to press charges at one-point stating "personally I'd rather see the fucker go back to jail."

68.     After several minutes of persuasion, at approximately 6 minutes and 45 seconds into the body cam video, the brother relents and agrees to press charges.

69.     Defendants Owen and Schroeder then have a specific discussion where they note Edwards' history of not cooperating when being placed under arrest, including "it's going to be just you and me," it's "gonna be a fight" and you can "tase him hundreds of times and it doesn't stop him."

70.     Defendant Owens stated that Edwards "belongs in prison."

71.     Despite knowing Edwards history, the Defendants inexplicably fail to call for back up for approximately 20 minutes while they talk with Edwards.

72. At around the 26-minute mark of the body cam video Defendant Owen becomes angry, states that he is now "pissed," that he "did not want a fight," but then directs Edwards to "get on the God Damn ground."

73. At the 26:20 mark of the body cam video Defendant Owen pulls his taser out and points it at Edwards.

74. Throughout the entire discussion Edwards remains calm and acts in a completely non-threatening manner.

75. At the 28:20 mark of the body cam video Defendant Owen fires the first set of taser prongs at Edwards and both prongs hit the target with Edwards immediately reacting to the shot in pain and falling to the ground. Any claim by the Defendants that the first set of tasers fired at Edwards did not take and/or had no effect is proven demonstrably false by the body cam video of the arrest.

76. Edwards starts to run away from the Defendants and Owen continuously tases him for 31 seconds from 28:19 to 28:50 of the body cam video. It is not clear when during that time period that Defendant Owen fired the second set of taser prongs into Edwards.

77. When Edwards begins to run away Defendant Schroeder pulls his taser out. Defendant Schroeder points his taser at Edwards and Edwards falls to the ground again. It appears from the video that Schroeder may also have used his taser at this point.

78. Edwards gets up again and starts to run while both Defendants have their tasers out and both appear to be deploying the tasers into Edwards.

79. Edwards falls to the ground for the last time at approximately 28:40 of the body cam video although he does crawl a short distance from the curb to the parking area next to the street.

80.     Defendant Owen tases Edwards a total of six times with the last five taser charges lasting between four to five seconds each and all occurring between 28:53 to 31:45 of the body cam video.

81.     Throughout the tasing process Edwards is heard crying out in pain and asking the Defendants to "stop, please stop."

82.     The second taser discharge, from 28:53-58, and the third taser discharge, from 29:00 to 29:05, occur after Edwards falls for the last time and while he is crawling from the street to the parking area.

84.     The fourth taser discharge, from 29:25 to 29:29, the fifth discharge, from 30:04 to 30:09, and the sixth discharge, from 31:41 to 31:45, all come after Edwards is face down on the ground with his left hand in a handcuff and while Defendants Owen and Schroeder are on top of Edwards and under their complete control.  Those last three taser discharges were made solely for the purpose of getting Edwards' right arm behind his back.

85.     For approximately 11 minutes, from body cam video 29:00 to 41:24, when Edwards takes his last breath, he in no way attempts to get up, escape or resist arrest other than not cooperating with the Defendants' effort to put his right arm behind his back.

86.     During that 11-minute time period Edwards is clearly in respiratory distress with labored and heavy breathing.

87.     At 29:40 of the body cam video Defendant Owen finally requests back up.

88.     Defendant Zeimet arrives roughly 8 minutes later at 37:51 of the body cam video and it takes him no more than a second or two to pull Edwards' right arm from under his body.

89.     By 38:05 of the body cam video, just 14 seconds after Defendant Zeimet's arrival, Edwards is in hand cuffs.

13

90.     At 38:18 of the body cam video Defendant Owen requested an ambulance "as protocol."

91.     For the next three minutes the Defendants provide no first aid to Edwards despite clear indications that he is having great difficulty breathing and then not breathing after 41:24 of the body cam video.

92.     At 41:41 of the body cam video the Defendants finally decide to assist Edwards by rolling him into the safety position on his side.  At this point Edwards face is blue and it is clear he is not breathing.

93.     At 42:10 the ambulance arrives and the first efforts to resuscitate Edwards begins.

94.     At 45:47 of the body cam video Defendant Owen goes to Zeimet and retrieves, presumably his own taser, removes the cartridges from the taser and drops them on the ground.

95.     At 45:59 of the body cam video Defendant Owen appears to pick the taser cartridges from the ground, but to date no information from any taser used to kill Edwards has been provided to Plaintiffs.

96.     At 46:24 of the body cam video Defendant states, "I fucking went way to high on him," understood to be referring to the level of electric shock delivered to Edwards.

97.     At 47:15 Defendant Owen states that "it takes more than 2 of us."

98.     At 48:30 of the body cam video either Chief of Police Koranda or Defendant Zeimet tell Defendant Owen to turn off his body camera and Owen complies with the request.

99.     To date no data from Defendant Schroeder's taser has been provided in order to confirm, one way or the other, whether his taser was used on Edwards.

## COUNT I

### USE OF EXCESSIVE FORCE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION and
### ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION

100.     Plaintiffs incorporate paragraphs 1 through 99 above as though fully set forth herein.

101.     Defendants' use of excessive force in causing the wrongful death of Drew Edwards was in violation of both the Constitutions of the United States, Fourth Amendment, and the State of Iowa, Article 1, Section 8.   Defendants' use of force was unreasonable, unnecessary, prolonged and/or reckless, resulting in Edwards' death.

102.     Defendants, acting under the color of state law, violated the right of Drew Edwards to be free from the use of excessive force in being placed under arrest, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section Eight, of the Iowa Constitution.

103.     Defendants proximately caused damages including emotional pain and trauma, past and future to Plaintiffs by the use of excessive force in effectuating the wrongful death of Drew Edwards in violation of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section Eight, of the Iowa Constitution.

104.     Defendants City of Maquoketa and Jackson County have established a policy, regulation, official decision, custom, or usage, and/or ratified such conduct after the fact, with reckless or deliberate indifference to the rights of persons in the position of Edwards and his family.

105.     Defendants City of Maquoketa and Jackson County have established, maintained, enforced, and/or ratified policies, regulations, official decisions, customs, or usages which

15

unconstitutionally deprive citizens of the right to be free from the use of excessive while being detained as guaranteed by the Fourth Amendment to the United States Constitution, and Article I, Section 8, of the Iowa Constitution.

106. Defendants City of Maquoketa and Jackson County through their policymakers and managers had prior actual or constructive knowledge of the use of excessive force by their employees and/or ratified such conduct after the fact.

107. Edwards was subjected to this official policy, regulation, official decision, custom, usage, and/or after-the-fact ratification when he was killed by Defendant Owen with the assistance of Defendants Schroeder and Zeimet.

108. Defendants' policy, regulation, official decision, custom, usage, and/or after-the-fact ratification as against Edwards was purposeful and intentional.

109. Defendants deprived Plaintiffs of the rights guaranteed them under the Fourth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983, and Section I, Article 8, of the Iowa Constitution, by seizing Edwards such that no reasonable person in Edwards's position would have believed they were free to leave without being taken into custody.

110. Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

111. Defendants acted in a willful, reckless and/or malicious manner subjecting them to punitive damages.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Mike Owen, individually, Steve Schroeder, individually, and Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their

injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive

damages as allowed by law; and for such other and further relief as may be just in the premises.

**COUNT II**

**SUBSTANTIVE DUE PROCESS**
**FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**
**and ARTICLE I SECTION 9 OF THE IOWA CONSTITUTION**

112.    Plaintiffs incorporate paragraphs 1 through 111 above as though fully set forth

herein.

113.    Defendants use of force was unreasonable, unnecessary, prolonged and/or reckless,

shocks the conscience and resulted in Edwards' death.

114.    At the time Defendants used a taser on Edwards and at all times all individual

Defendants restrained Edwards they knew he was not a physical threat to their safety or the safety

of anyone else and that using a taser on him would likely result in serious injury or death because

of his known heart condition/adverse reaction to being tased that previously required

hospitalization.

115.    Defendants made the decision to use a taser on Edwards at a time when waiting for

additional back up; using other available weapons, *e.g.* pepper spray or batons, or retreating and

arresting him later were clear and viable options.

116.    Defendant Owen did not need to continue to tase Edwards while waiting for back

up because Edwards was only non-compliant and not actively resisting arrest; and because once

Defendant Zeimet arrived and went hands-on to assist in handcuffing Edwards the goal of getting

the handcuffs on Edwards was quickly accomplished.

117.   Defendants knew Edwards was a polite and reasonable, even deferential, person when not under the influence of drugs, and they knew where Edwards lived just a few blocks from where he was murdered.

118.   In using a taser on Edwards, Defendants acted in an objectively unreasonable manner and/or with deliberate indifference to a significant risk of harm to Edwards.

119.   In firing a taser at Edwards, Defendant Owen acted with malice and with the specific intent to cause harm.

120.   In watching Defendant Owen repeatedly fire a taser at Edwards without warning and/or reminding Defendant Owen of Edwards' known heart condition/adverse reaction to being tased requiring hospitalization and while assisting in Edwards' restraint without providing first aid, Defendants Schroeder and Zeimet acted with malice and with the specific intent to cause harm.

121.   Defendants acted under color of state law, violated the right of Drew Edwards to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution.

122.   The Defendants City of Maquoketa and Jackson County violated the right of Drew Edwards to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution by failing to properly train and equip Defendants Owen, Schroeder and Zeimet; by ratifying their wrongful conduct after the fact; and/or by engaging in a cover up of their wrongful conduct.

123.   Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

18

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Mike Owen, individually, Steve Schroeder, individually, and Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

**COUNT III**
**WRONGFUL DEATH – NEGLIGENCE –**
**IOWA LAW**

124. Plaintiffs incorporate paragraphs 1 through 123 above as though fully set forth herein.

125. Defendants owed Plaintiffs a duty to act reasonably in the use of force; to conform to an objectively reasonable standard of conduct regarding when, where and under what circumstances use of force is warranted; and to not deprive Edwards of his inalienable rights to enjoy and defend his life, and pursue and obtain safety and happiness in accord with Article I, Section 1, of the Iowa Constitution.

126. Defendants Owen, Schroeder and Zeimet breached that duty by pressuring Edwards' brother and his girlfriend into pressing charges in the first place; discharging a taser in Owen's case and potentially in the case of Defendant Schroeder; or not warning or prohibiting others from discharging a taser at Edwards given Edwards' known medical condition/adverse reaction to being tased and that use of a taser on him would likely cause serious injury or death; all while assisting in the restraint of Edwards during the process; by continuing to tase Edwards after he was under physical control in Owen's case; by failing to use other less lethal forms of force; by failing to wait for sufficient backup; by failing to deescalate the situation; by failing to retreat and arrest Edwards at a later time; by continuing to restrain Edwards and failing to provide

him first aid after it was clear he was in distress; and/or by using other available means and conduct to handle the situation without causing the death of Edwards.

127.   Defendants City of Maquoketa and Jackson County owed Plaintiffs a duty to have in place reasonable policies and procedures regarding the use of force, and/or to properly train and supervise its officers, including Defendants Owen, Schroeder and Zeimet, in an objectively reasonable standard of conduct regarding when, where and under what circumstances use of force is warranted.

128.   Defendants City of Maquoketa and Jackson County breached those duties by not having in place reasonable policies and procedures regarding the use of force, and/or by failing to properly train and/or supervise Defendants Owen, Schroeder and Zeimet regarding the appropriate use of  force; the effect of using tasers on individuals with heart conditions/adverse reactions like Edwards; and/or by ratifying the wrongful conduct after the fact.

129.   The Defendants City of Maquoketa and Jackson County are responsible for the conduct of Owen, Schroeder and Zeimet under *respondeat superior*.

130.    The Defendants breach of duty owed caused injuries and damages to the Plaintiffs including the wrongful death of Edwards and the loss of adult child consortium for Plaintiffs Walter and Barbara Edwards.

131.   At all times relevant hereto Defendants Owen, Schroeder and Zeimet acted as agents of Defendant City of Maquoketa or Jackson County and within the scope of their authority as law enforcement officers.

132.   In the alternative, should Defendants claim immunity and/or qualified immunity for acts within the scope of authority Plaintiffs plead that the Defendants acted outside that scope of their authority.

133. Defendants City of Maquoketa and Jackson County ratified the conduct of Defendants Owen, Schroeder and Zeimet after they took the actions complained of in this complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Mike Owen, individually, Steve Schroeder, individually, and Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT IV

## LOSS OF CONSORTIUM – WALTER AND BARBARA EDWARDS

134. Plaintiffs incorporate paragraphs 1 through 133 above as though fully set forth herein.

135. Walter and Barbara Edwards are the parents of Drew Edwards.

136. Since Drew Edwards' death Walter and Barbara Edwards have suffered loss of aid, companionship, cooperation, and affection of their son, Drew Edwards.

137. As a result of said losses Walter and Barbara Edwards have been damaged.

138. The Defendants are liable to Walter and Barbara Edwards for their losses of consortium.

139. The losses of Walter and Barbara Edwards are individual and separate from the losses sustained by the Estate of Drew Edwards as the result of his death caused by the wrongful conduct of the Defendants.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Maquoketa, the County of Jackson, Mike Owen, individually, Steve Schroeder, individually, and

Brendan Zeimet, individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages as allowed by law; and for such other and further relief as may be just in the premises.

**COUNT V**

**VIOLATION OF OPEN RECORDS LAWS**
**INCLUDING ARTICLE I, SECTION 2 of the IOWA CONSTITUTION –**
**AGAINST THE CITY OF MAQUOKETA ONLY**

140.    Plaintiffs incorporate paragraphs 1 through 139 above as though fully set forth herein.

141.    The Defendant City of Maquoketa, through its representatives, has conspired to cover up the wrongful and unconstitutional conduct of Defendants Owen, Schroeder and Zeimet by refusing to disclose the facts and circumstances of the death of Drew Edwards and intentionally misleading the public about the justification for tasing him to death.

142.    The Defendant City of Maquoketa has a history of being involved in the cover up of wrongful conduct by law enforcement officers and prosecutors.

143.    Defendant City of Maquoketa has specifically and unlawfully refused an open records request from the family of Drew Edwards for all audio, video, reports and investigative files of the death of Edwards, particularly those prepared within the first 96 hours after his murder.

144.    The City of Maquoketa has refused to comply with a recent Iowa Supreme Court case noting, as follows:

> There is a presumption in favor of disclosure' and 'a liberal policy in favor of access to public records.' *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012). 'Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability.' *Diercks*, 806 N.W.2d at 652 (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999)).

22

*Mitchell v. Cedar Rapids*, No. 18-0124, filed April 5, 2019, pp. 10-11. Defendant City of Maquoketa refused to release records covered by the *Mitchell* holding.

145.     Defendant City of Maquoketa refused to release "any investigative reports or electronic communication generated or filed within 96 hours of the incident, but does not apply to reports or memorandum generated solely for purposes of a police internal review of the incident," as held by the Iowa Supreme Court in *Mitchell*. At p. 6.

146.     Defendant City of Maquoketa refused to provide a privilege log identifying what records it was refusing to release and then attempted to put the burden on Plaintiffs to "provide [it] with the public interest disclosure of the records would serve," without identifying any of the records being withheld, all in violation of Iowa law and the holding in *Mitchell*.

147.     Defendant City of Maquoketa claims the exclusive right to determine what records are to be produced, contrary to the holding in *Mitchell*, stating that the City "will identify any records weighing in favor of disclosure."

148.      Defendant City of Maquoketa is intentionally delaying the freedom of information act process, and its representatives have a history of filing unnecessary and frivolous appeals of orders to release information for the purpose of covering up the wrongful conduct of law enforcement officers.

149.     The tactics of the City of Maquoketa, through its representatives, along with others intent on keeping government wrongdoing secret, have made it fruitless and impossible to properly enforce Iowa's open records laws.

150.     The City of Maquoketa should be immediately required to release all information regarding the tasing death of Drew Edwards in compliance with the holding of the Iowa Supreme Court in *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 5, 2019.

23

151.    The Defendant City of Maquoketa has acted in violation of Article I, Section 2, of the Iowa Constitution, requiring that "[a]ll political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it."

152.    An essential component of Article I, Section 2, of the Iowa Constitution is that governmental wrongdoing cannot be withheld from public scrutiny.  Otherwise, the people do not have "all inherent political power."  The people are unable to "alter or reform government" as necessary to avoid future wrongdoing if the wrongdoing is hidden from them.

153.    Defendants proximately caused damages to Plaintiffs by conspiring to deny access to the facts and circumstances surrounding the death of Drew Edwards and covering up the murder of Drew Edwards, all in violation of Iowa law and the Iowa Constitution.

**WHEREFORE,** the Plaintiffs pray for an Order from this Court requiring the Defendant City of Maquoketa to publicly release all records regarding the tasing death of Drew Edwards in compliance with *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 5, 2019; for damages, including punitive damages, as allowed by law; attorneys' fees; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

## JURY DEMAND

The Plaintiffs, Patricia Steines, as Administrator of the Estate of Drew Edwards, and Walter and Barbara Edwards, respectfully request a trial by jury on all legal claims raised by this Complaint.

Respectfully submitted,

**DAVE O'BRIEN LAW**
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone: (319) 861-3001
Facsimile: (319) 861-3007
E-mail: dave@daveobrienlaw.com

By: /s/ David A. O'Brien
     DAVID A. O'BRIEN, AT0005870

By: /s/ Andrew L. Mahoney
     ANDREW L. MAHONEY AT0012329
     **CROWLEY & PRILL**
     3012 Division Street
     Burlington, Iowa 52601
     Phone: 319.753.1330
     Fax: 319.752.3934
     Email: amahoney@cbp-lawyers.com

**ATTORNEYS FOR PLAINTIFFS**

**Original Filed.**